UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:24-cv-

FITNESS TOGETHER FRANCHISE, L.L.C.,

        Plaintiff,

v.

TIGER VENTURES, INC.;
BALLANTYNE FITNESS SOLUTIONS, INC.;
CHAVANNE SCOTT; and
CLIFTON HELLNER,

        Defendants.

---

**COMPLAINT**

---

Plaintiff Fitness Together Franchise, LLC ("FTF") files this Complaint against Tiger Ventures, Inc. ("Tiger Ventures"); Ballantyne Fitness Solutions, Inc. ("Ballantyne Fitness"); Chavanne Scott; and Clifton Hellner (collectively, "Defendants") seeking an injunction and damages as follows:

**NATURE OF THE CASE**

1.      This is an action for breach of contract, misappropriation of trade secrets, and trademark infringement arising out of and in connection with Scott's decision to stop paying contractual royalties and, instead, to use FTF's trade secrets and trademarks to compete against FTF in violation of contractual obligations and state and federal law.

2.      Specifically, FTF, which operates a national franchise business for private personal fitness training studios ("Studios" or "Fitness Together Studios") under the Fitness

Together® brand, brings this lawsuit against a former FTF franchisee (Tiger Ventures) and its sole owner (Scott)—both of whom entered into and breached a binding and enforceable franchise agreement with FTF. (Ex. 4, "Franchise Agreement".) FTF also brings this lawsuit against Ballantyne Fitness (an entity that Scott and Hellner created to compete against FTF) and Hellner (Scott's husband, Chief Executive Officer of Tiger Ventures, and the registered agent and incorporator of Ballantyne Fitness).

3. In pertinent part, the Franchise Agreement between FTF and Tiger Ventures licensed Scott and Tiger Ventures to operate a Fitness Together Studio under FTF's trademarks for a ten-year contractual term and permitted them access to FTF's proprietary, confidential, and trade secret information. To protect that information and FTF's goodwill and national brand name, the Franchise Agreement likewise prohibited Scott and Tiger Ventures from using FTF's trade secret information or trademarks outside the operation of their Studio or after the agreement's termination. It also prohibited Scott, Tiger Ventures, and Hellner (as a bound party under the non-compete provision) from competing against FTF during the term of the Franchise Agreement, or for two years after.

4. Despite these contractual obligations, FTF recently discovered that Defendants are, and have been, operating a competing personal training business out of Scott and Tiger Ventures' former Fitness Together Studio. Critically, FTF has further learned that, to establish and operate their new competitive business, Defendants also misappropriated and are improperly using FTF's trade secret information, including confidential and proprietary client information, and displaying FTF's registered trademarks without FTF's authorization.

5.      As a result of Defendants' misconduct, FTF has suffered and will continue to suffer substantial, irreparable harm. Indeed, Defendants are <u>daily</u> depriving FTF of business opportunities, diminishing FTF's competitive position in the marketplace, and devaluing FTF's trade secrets and trademarks. FTF is likewise suffering and will continue to suffer decreased enterprise value and a loss of the substantial business goodwill that it has built over the course of several decades. Moreover, Defendants' conduct also threatens a domino effect through the franchise system, as their violations, if left unchecked, will embolden other franchisees to abandon the FTF franchise and open a competitive business, misusing FTF's trade secrets and trademarks to do so.

6.      Because Defendants are irreparably harming FTF, FTF is seeking not only economic damages, but also preliminary and permanent injunctive relief barring Defendants from unlawfully competing against FTF; using, copying, or distributing FTF's confidential, proprietary, and trade secret information; and using or displaying FTF's trademarks.

## **PARTIES**

7.      Plaintiff FTF operates a national franchise business for private personal training studios under the Fitness Together® brand, and has its principal place of business in Denver, Colorado.

8.      Defendant Tiger Ventures, Inc. was formed on March 11, 2016, maintains a principal office and operated a business at 16151 Lancaster Hwy Suite C, Charlotte, North Carolina 28277, and has a registered mailing address of 1909 Madeira Circle, Waxhaw, North Carolina 28173.

3

9.      Defendant Ballantyne Fitness Solutions, Inc. was formed on June 22, 2023, and has a registered mailing address of 1909 Madeira Circle, Waxhaw, North Carolina 28173. Upon information and belief, Ballantyne Fitness maintains an office and is operating a business at 16151 Lancaster Hwy Suite C, Charlotte, North Carolina 28277. The articles of incorporation for Ballantyne Fitness filed with the North Carolina Secretary of State indicates that the entity does not have a principal office.

10.     Defendant Chavanne Scott is an individual residing, upon information and belief, at 1909 Madeira Circle, Waxhaw, North Carolina 28173. Scott is the Chief Executive Officer and the sole owner of Tiger Ventures. Scott is the Chief Operating Officer of Ballantyne Fitness.

11.     Defendant Clifton Hellner is an individual residing, upon information and belief, at 1909 Madeira Circle, Waxhaw, North Carolina 28173. Hellner is the executive officer of Tiger Ventures. Hellner incorporated and is the registered agent of Ballantyne Fitness.

## JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121(a) and 28 U.S.C. §§ 1331 in that this civil action arises under the Defend Trade Secrets Act, 18 U.S.C. §§ 1836, et. seq., and the Trademark Laws of the United States, Lanham Act 15 U.S.C. § 1051 *et seq.* This Court has supplemental jurisdiction over FTF's state claims pursuant to 28 U.S.C. § 1367.

13.     This Court has personal jurisdiction over Defendants and venue is proper in this District pursuant to the forum-selection clause contained in the Franchise Agreement. (Ex. 4, § 14.) *See Nat. Equip. Rental, Ltd. v. Szukhent*, 375 U.S. 311, 315 (1964); *Williams v. Life Sav. and Loan*, 802 F.2d 1200, 1202 (10th Cir. 1986).

4

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

**A.     FTF Is a World-Leading Personal Training Studio Franchise System with Unique Methods and Trademarks**

14.     FTF is one of the world's largest personal training fitness franchises. Established in 1983, FTF began franchising in 1996, and now has approximately 100 locations nationwide.

15.     FTF is dedicated to changing lives by helping its clients set and stick to their fitness and health goals through a customized fitness and nutrition experience in a private-suite personal training setting.

16.     For over four decades, FTF has developed unique methods to establish, operate, and promote its one-on-one and personal small group physical fitness training Studios, a nutrition program, and related products and services.

17.     For over 25 years, FTF's franchise methods have included the regular use of the "Fitness Together" trademark, together with other valuable trademarks, service marks, trade names, symbols, emblems, slogans, insignias, designs, and logos (together, the "Marks") for use in establishing and promoting Fitness Together Studios and to identify and distinguish FTF's fitness and nutrition services and programs from those of others.

18.     FTF also owns several federal trademark/service mark registrations for its Marks with the United States Patent and Trademark Office ("USPTO"), including federal registrations for FITNESS TOGETHER (words only) (*see* U.S. Registration No. 2,373,930, Ex. 1), FITNESS TOGETHER 1 CLIENT 1 TRAINER 1 GOAL (& design) (*see* U.S. Registration No. 3,761,267, Ex. 2), FITNESS TOGETHER (& design) (*see* U.S. Registration No. 3,760,855, Ex. 3).

19.     FTF's Marks remain active and in use in commerce today.

5

20.     FTF has invested substantial time, money, and effort in developing the goodwill associated with the Marks in connection with its fitness franchise. In particular, FTF spends significant funds each year to market and promote its mission and Marks, and maintain its visibility and brand awareness in the highly competitive fitness and nutrition industry.

21.     As part of its national business model, FTF grants to franchisees the right to establish and operate Fitness Together Studios under the Marks according to FTF standards, specifications, methods, techniques, and operating and other procedures ("System Standards"), which constitute FTF's unique Fitness Together franchise system (the "Franchise System").

**B.      FTF Enters into a Franchise Agreement with Tiger Ventures**

22.     On March 11, 2016, Scott formed Tiger Ventures and became its sole owner.

23.     In October 2016, Tiger Ventures entered the Franchise System when it purchased a Fitness Together Studio from Andermac LLC (a former FTF Franchisee) located at 16151 Lancaster Hwy Suite C, Charlotte, North Carolina (the "Ballantyne Studio"). FTF consented to the purchase and approved the transfer of the Ballantyne Studio to Tiger Ventures.

24.     On October 31, 2016, FTF then entered into the Franchise Agreement with Tiger Ventures, which granted it the right to operate the Ballantyne Studio. (Ex. 4.)

25.     Scott personally guaranteed the Franchise Agreement—that is, she agreed to be personally bound by, and liable for the breach of, each and every provision contained therein (the "Personal Guarantee"). (*Id.*, Exhibit 4 attached thereto, p. 3.) As Scott's spouse, Hellner also acknowledged and consented to Scott's Personal Guarantee, which served to bind the assets of the marital estate to Scott's performance of the Personal Guarantee. (*Id.*, Exhibit 4, p. 4.)

6

  **C.**  **The Franchise Agreement Requires Scott and Tiger Ventures to Protect FTF's Marks and Maintain the Secrecy of FTF's Confidential, Proprietary, and Trade Secret Information**

26. Under the Franchise Agreement, Scott and Tiger Ventures gained the right to access and use FTF's Marks in connection with the Ballantyne Studio.

27. The Franchise Agreement thus contains several provisions to protect FTF's exclusive rights to its Marks and resulting goodwill, including but not limited to:

  a. Section 6.1. <u>Ownership; Goodwill</u>, acknowledging that the Marks "remain under. . . sole and exclusive ownership and control" of FTF and Scott and Tiger Ventures do "not acquire any right, title, or interest in the Marks except for the right to use the Marks in operation of [the Ballantyne] Studio" under the Franchise Agreement. (*Id.*, § 6.1.)

  b. Section 6.2. <u>Limitations on Use</u>, limiting Scott and Tiger Ventures from using "any Mark as part of any Entity name . . . [or] in connection with unauthorized services or products or in any other manner not expressly authorized by [FTF] in writing. (*Id.*, § 6.2.)

  c. Section 6.3. <u>Discontinuance of Use of Marks</u>, requiring that, "[i]f it becomes advisable at any time for [FTF] . . . to modify or discontinue the use of any Mark . . . [Tiger Ventures] must comply with [FTF's] directions to do so within a reasonable time after [FTF] provide[s] notice to [Tiger Ventures]." (*Id.*, § 6.3.)

28. The Franchise Agreement further allowed Scott and Tiger Ventures access to and use of FTF's proprietary, confidential, and trade secret information, consisting of, among other things, the Marks, the Proprietary Assets (defined below), FTF's System Standards, and other methods, techniques, formats, specifications, procedures, information, systems, methods of business management, sales and promotion techniques, and knowledge of and experience in the operation of a Fitness Together Studio ("Confidential Information") (*Id.*, §§ 12.4, 12.5.)

29. The Franchise Agreement defines FTF's "Proprietary Assets" as follows:

  The distinguishing characteristics of the Franchise System include the Marks, the interior layout and design, color scheme, signage

7

and equipment, copyrights, titles, symbols, emblems, slogans, insignia, designs, diagrams, artworks, worksheets, originals, manuals, techniques, rules, ideas, philosophies, illustrations, course materials, the confidential operations manual other manuals, technical bulletins, other written or videotaped materials and other materials and documents related to the operations of your Studio (such manuals, technical bulletins, other written or videotaped materials and other materials and documents related to the operations of your Studio are collectively referred to in this Agreement as, the "Operations Manual"), the System Standards, advertising and promotional materials, the Nutrition Together™ guide, the Fitness Program, other audio, video and written materials, and other aspects of the Franchise System we have developed and designated for use within the Franchise System, or may acquire or develop and designate for use within the Franchise System in the future, all of which we may enhance and further develop (the "Proprietary Assets").

(*Id.*, p. 2, ¶ C.)

30.    The Franchise Agreement also expressly includes, as Confidential Information, all client information of all Fitness Together Studios in the Franchise System, including the Ballantyne Studio (the "Client Information"). Client Information consists of all client contact information; buying habits and preferences; medical and health information such as medications, injuries, illnesses, pre-existing conditions, alcohol and tobacco intake, blood pressure, body composition, dietary restrictions; the client's fitness and nutrition goals, habits, customized fitness and nutrition programs; documented notes from sessions regarding client performance and preferences; and any other relevant information the client discloses.

31.    The Franchise Agreement makes clear that FTF, not Scott or Tiger Ventures, owns all Client Information. (*Id.*, §§ 7.5(m), 12.4.)

32.    Further, under the Franchise Agreement, "any ideas, concepts, methods, and techniques or materials concerning any Studio . . . whether or not created by or for [Scott] . . .

8

will be deemed to be [FTF's] and [FTF's] affiliates' sole and exclusive property, part of the Franchise System . . . ." (*Id.*, § 12.4.)

33.     FTF has invested substantial time and effort to maintain the secrecy of FTF's Confidential Information through contractual protections and also by storing such information in highly-confidential, password-protected databases.

34.     The Franchise Agreement also (1) prohibits Scott, Tiger Ventures, and any Bound Party[1] from using FTF's Confidential Information in any other business or capacity; (2) acknowledges that FTF's Confidential Information includes FTF's trade secrets; and (3) requires Scott, Tiger Ventures, and any Bound Party to maintain the absolute confidentiality of all Confidential Information during and after the term of the Franchise Agreement. (*Id.*, § 12.4.)

35.     The Franchise Agreement also contains provisions and restrictive covenants intended to protect Confidential Information, including 25 itemized franchisee obligations to "protect the Marks, the Proprietary Assets and the Franchise System, and their associated goodwill." (*Id.*, § 7.6.)

36.     The Franchise Agreement also details specific post-termination requirements requiring Scott and Tiger Ventures to cease using FTF's Marks and Confidential Information. Specifically, Scott and Tiger Ventures were required to:

>    a.    cease "doing anything that would indicate any relationship" with FTF, including "identifying . . . as a franchisee of the Franchise System" (*Id.*, §10.4(b));

---

[1] The Franchise Agreement defines "Bound Parties" to include Scott, Tiger Ventures, and "officers, directors, shareholders, members, partners or other owners . . . [and a] spouse," which includes Hellner. (Ex. 4, § 12.1.)

b.  cease "using any of the Marks and Proprietary Assets [including the Client Information] or any confusingly similar names, marks, systems, insignia, symbols or other procedures or methods" (*Id.*, §10.4(b));

c.  return to FTF "all . . . manuals, plans, specifications, designs, records, data samples, models, programs, materials, handbooks, drawings, and other materials" (*Id.*, §10.4(c));

d.  transfer to FTF all Client Information (*Id.*, §10.5); and

e.  notify clients of the ceased affiliation with FTF and direct them to another Fitness Together Studio, and refund any monies owed to clients for unused services (*Id.*, §10.5.)

37.  The Franchise Agreement further makes clear that "the Marks and Proprietary Assets have valuable goodwill attached to them, that their protection and maintenance are essential to [FTF], and that any unauthorized use or disclosure of the Marks, the Proprietary Assets or other Confidential Information will result in irreparable harm to [FTF]." (*Id.*, § 12.4.) As a result, "[n]othing in th[e Franchise] Agreement shall prevent [either party] from seeking injunctive relief . . . to prevent irreparable harm." (*Id.*, § 14.8.)

38.  Moreover, the Franchise Agreement states that, in the event either party must initiate a proceeding to enforce the terms of the Franchise Agreement, the prevailing party will be entitled to reasonable costs and expenses, including attorneys' fees. (*Id.*, §§ 14.7, 15.9.)

**D.  The Franchise Agreement Prohibits Scott, Tiger Ventures, and Hellner from Competing against FTF during and after the Franchise Agreement's Term**

39.  To further protect against the dissemination and use of FTF's trade secrets, the Franchise Agreement prohibited Scott, Tiger Ventures, and Hellner (as a Bound Party) from competing against FTF during or after the term of the Franchise Agreement. Specifically:

a.  Section 12.1. Non-Competition During Term, prohibits any direct or indirect interest in; performing services for; or diverting or attempting to divert any Studio-related

10

business to a Competitive Business.[2] The provision likewise prohibited the unauthorized use or copying of FTF's Proprietary Assets, methods, techniques, and materials. (*Id.*, § 12.1.)

   b. Section 12.2. <u>Post-Termination Covenant Not to Compete</u>, prohibits, for a period of two years, Scott, Tiger Ventures, and any Bound Party from having any direct or indirect interest in any other capacity in any Competitive Business located or operating within a three-mile radius of any other Fitness Together Studio, including Tiger Ventures's Studio. (*Id.*, § 12.2.)

**E.    The Franchise Agreement Requires Scott and Tiger Ventures to Pay Royalties to FTF**

40.    In light of the significant benefits that Scott and Tiger Ventures received from FTF, including the right to access and use FTF's Marks and Confidential Information, among other things, the Franchise Agreement required them to pay to FTF a royalty in the amount of six percent of gross receipts, due on the fifth day of each month. (*Id.*, § 4.2.) Gross receipts included all of the Ballantyne Studio's revenue and receipts. (*Id.*, § 4.4.)

41.    Scott and Tiger Ventures authorized FTF to automatically withdraw the monthly royalty payment from a designated bank account. (*Id.*, § 4.4.)

42.    The Franchise Agreement also described other fees and costs that Scott and Tiger Ventures were obligated to pay to FTF, including a technology fee, a marketing fund contribution, late payment or default fees, and other fees. (*Id.*, pp. 7-8, §§ 4.6, 4.7, 4.8, 4.11.)

43.    In the event of termination of the Franchise Agreement, Scott and Tiger Ventures were obligated to pay all outstanding royalty amounts and other amounts due. (*Id.*, § 10.4(a).)

---

[2] "Competitive Business" is defined in the Franchise Agreement as any "one-on-one or personal small group physical fitness studios or any other physical fitness or nutrition service business, or any business offering or selling products or educational materials, or conducting workshops for, services that are the same as, similar to, or competitive with the Franchise System or other Studios . . . ." (Ex. 4, § 12.1.)

**F.      Scott and Tiger Ventures Stop Paying Royalties and FTF Terminates the Franchise Agreement**

44.      Beginning in or around June 2023, Scott and Tiger Ventures unilaterally and without authorization stopped making the required royalty and other fee payments to FTF. Although Scott and Tiger Ventures authorized FTF to automatically withdraw amounts owed from a designated bank account, Scott and Tiger Ventures failed to maintain sufficient funds in the account to cover those amounts.

45.      As a result, on June 6, 2023, FTF notified Scott and Tiger Ventures that they were in default of the Franchise Agreement (the "Default Notice", Ex. 5). The Default Notice informed them that they owed a total of $9,255.45 in unpaid amounts, including overdue royalty payments, technology fees, marketing fund contributions, late payments, and other fees. (*Id.*, p. 1.) FTF attached to the Default Notice a statement showing the overdue amounts. (*Id.*, p. 3.) In the Default Notice, FTF warned Scott and Tiger Ventures that a failure to cure their breaches of the Franchise Agreement could result in its termination. (*Id.*, p. 2; Ex. 4, § 10.1(h).)

46.      In response to the Default Notice, Scott requested that FTF allow her to enter into a payment plan to pay the overdue amounts. FTF agreed.

47.      On June 14, 2023, FTF sent to Scott and Tiger Ventures a letter describing a payment plan that would allow Scott and Tiger Ventures to cure their defaults by making three monthly payments of $3,958.37 to pay the overdue amounts. (Ex. 6, p. 1.) At that time, Scott and Tiger Ventures' outstanding amounts had increased to $11,875.13. (*Id.*, p. 1.) Under the payment plan, the first payment would be automatically withdrawn from Scott's designated account on June 21, 2023, with the following two payments to be withdrawn on July 15 and August 15. (*Id.*,

12

p. 1.) After making the three monthly payments in the payment plan, Scott and Tiger Ventures would not have any overdue amounts owed to FTF.

48. Despite agreeing to the payment plan (Ex. 6, p. 4), Scott and Tiger Ventures did not comply. Instead, when FTF attempted to withdraw the first payment on June 21, Scott's account did not have sufficient funds. Later, FTF charged Scott a $150 fee for maintaining insufficient funds in her account (Ex. 7, p. 4), as required by the Franchise Agreement. (Ex. 4, § 4.8.) Scott and Tiger Ventures failed to make the subsequent two payments as well.

49. Indeed, Scott and Tiger Ventures never complied with the payment plan or paid back the amounts owed. Over the next several months, Scott's overdue payments grew. By the end of November 2023, Scott and Tiger Ventures owed FTF $17,857.18. (Ex. 7, p. 5.)

50. On December 26, 2023, FTF again informed Scott and Tiger Ventures that they were in default of their payment obligations under the Franchise Agreement. (*Id.*) FTF gave Scott and Tiger Ventures another opportunity to cure their default, requesting that they pay all overdue amounts within ten days, or FTF would terminate the Franchise Agreement (the "Termination Notice"). (*Id.*, p. 2.)

51. In the Termination Notice, FTF reminded Scott and Tiger Ventures of their post-termination obligations, including those described in Sections C and D above. (*Id.*, pp. 2-3.) Specifically, FTF informed Scott and Tiger Ventures that, upon termination of the Franchise Agreement, among other things, they must:

- "Cease identifying . . . as a franchisee of" FTF (*Id.*, p. 2);

- "Cease using any of the Marks and Proprietary Assets or any confusingly similar names, marks, systems, insignia, symbols or other procedures or methods" (*Id.*, p. 2);

- "Cease doing anything that would indicate any relationship between" Tiger Ventures or Scott and FTF (*Id.*, p. 2);

- "Refund amounts owed to clients of the Studio for all outstanding liability, including unused sessions" (*Id.*, p. 3);

- "Direct clients to another studio that can perform any unused but prepaid services for clients" (*Id.*, p. 3); and

- "Transfer the [Client Information] to" FTF (*Id.*, p. 3).

52.    Scott did not respond to the Termination Notice.

53.    On January 11, 2024, FTF sent a letter to Scott and Tiger Ventures notifying them that the Franchise Agreement was deemed terminated, effective immediately, due to their failure to pay the overdue amounts described in the Default and Termination Notices ("Termination Confirmation"). (Ex. 8, pp. 1-2.) As of the end of December 2023, Scott and Tiger Ventures owed FTF $19,950.96. (*Id.*, p. 6.)

54.    In the Termination Confirmation, FTF again reminded Scott and Tiger Ventures of their post-termination obligations, including those described in the previous Termination Notice. (Ex. 7, pp. 2-3; Ex. 8, p. 2.)

55.    As of the end of January 2024, Scott and Tiger Ventures owed FTF $21,689.48 in unpaid royalties and other fees. (Ex 8, p. 2.)

**G.    Defendants Begin Operating a Competing Business in the Same Location and Using FTF's Confidential Information, Trade Secrets, and Trademarks to Compete against FTF**

56.    Despite the Franchise Agreement's clear post-termination obligations and FTF's repeated reminders to Scott and Tiger Ventures about the same, FTF has recently discovered that Scott and Tiger Ventures have flagrantly violated them.

14

57.    Specifically, FTF has discovered that Defendants are unlawfully operating a Competitive Business out of the Ballantyne Studio. Indeed, almost three weeks after termination, on January 28, 2024, Scott responded to the Termination Confirmation by email. (Ex. 9.) Scott's signature block included a reference to a company called Evolve Personal Training Inc. ("Evolve Personal Training") and a link to a Facebook page. (*Id.*, p. 1.)



58.    The Facebook page and website for Evolve Personal Training each include an address—16151 Lancaster Hwy, Charlotte, North Carolina—that matches the Ballantyne Studio's address (Ex. 10, p. 1; Ex. 11, p. 5):



15



59.     The website for Evolve Personal Training, evolveballantyne.com, states that Scott

is the owner and that it offers "PRIVATE 1 ON 1 PERSONAL TRAINING, SEMI-

PRIVATE/SMALL-GROUP FITNESS COACHING" and other personal fitness services.

(Ex. 11, pp. 1, 8.) The website further provides:

> Evolve Personal Training offers a comprehensive approach to the
> achievement of your enhanced health and fitness. Our
> transformative programs help to build a foundation of health, joy,
> and exuberance. By balancing evidence-informed practice with
> innovation, we provide a customized and highly individualized
> service to meet the unique needs of our clients. (*Id.*, p. 1.)

60.     The website also promises "a raft of services" including "an Introductory phone

call to learn more about your specific needs, wants, and goals", "an in depth Consultation which

includes a Health & Goal Assessment", and "the perfect blend of training, nutrition, and other

modalities in a completely bespoke manner like never before." (*Id.,* p. 3.)

61.     In other words, Evolve Personal Training offers individualized fitness training,

nutrition programs, and other services that are similar to, if not the same as, those that FTF offers

through its Fitness Together Studios. Evolve Personal Training is therefore an unauthorized and improper Competitive Business under the terms of the Franchise Agreement.

62.     In her January 28, 2024, email responding to the Termination Confirmation, Scott failed to acknowledge that Defendants are operating a Competitive Business. She likewise refused to pay overdue royalties and other fees, recommending instead that FTF try "recovering the funds" from the prior owners of the Ballantyne Studio. (Ex. 9, p. 2.)

63.     Moreover and critically, Evolve Personal Fitness is improperly operating under FTF's Marks. Defendants have failed to remove the exterior Fitness Together signage from the Ballantyne Studio, which they are now operating as Evolve Personal Training:

 

64.     Defendants have never asked for, nor obtained, permission from FTF to use the Marks in connection with their Competitive Business—Evolve Personal Training. To the

contrary, the Termination Notice and Termination Confirmation each notified Scott and Tiger Ventures that the Franchise Agreement required that they "Cease using any of the Marks and Proprietary Assets or any confusingly similar names, marks, systems, insignia, symbols or other procedures or methods." (Ex. 7, p. 2; Ex. 8, p. 2.)

65.     Further, upon information and belief, Defendants are also using FTF's Confidential Information to operate Evolve Personal Training. Indeed, Scott has refused, by email, to transfer all Client Information to FTF, despite the Franchise Agreement requiring her— and Tiger Ventures—to do so. Instead, Scott has made clear that she "set up a new business structure to service [certain existing customers] and will be operating in the former FT Ballantyne [Studio] location." She added her intention to "evolve from FT Ballantyne with at least 24 Clients." (Ex. 9, pp. 2-3.)

66.     Scott's and Tiger Ventures' decision to continue servicing FTF clients at their Competitive Business using FTF's Confidential Information violates the Franchise Agreement. (Ex. 4, § 12.2.) Hellner's and Ballantyne Fitness's participation in the same further violates state and federal law.

67.     In fact, on information and belief, Scott and Tiger Ventures planned to end their relationship with FTF and, along with Hellner and their entity Ballantyne Fitness, misappropriate FTF's Confidential Information to compete against FTF, shortly after receiving the Default Notice. Indeed, on June 23, 2023 (merely two weeks after receiving the Default Notice), Scott and Hellner created Ballantyne Fitness. Ballantyne Fitness's registration documents reflect that Scott is its Chief Operating Officer, and Hellner is its registered agent and incorporator. The registered office and registered mailing address of Ballantyne Fitness are the same as the

registered mailing address for Tiger Ventures: 1909 Madeira Circle, Waxhaw, North Carolina 28173.

68.     On information and belief, Evolve Personal Training, Inc. is not a registered company with the North Carolina Secretary of State.

69.     In addition, FTF has discovered that Scott, on January 12, the day after the Franchise Agreement terminated, improperly forwarded Client Information from her Fitness Together email account to her personal account. On information and belief, Defendants are using that Client Information to operate Evolve Personal Training.

70.     Defendants have never requested, nor obtained, permission from FTF to use FTF's Confidential Information in connection with Evolve Personal Training. Nor did FTF authorize Scott, Tiger Ventures, or Hellner to operate a Competitive Business in the first instance. To the contrary, the Termination Notice and Termination Confirmation each notified Scott and Tiger Ventures that the Franchise Agreement required them to "[d]irect clients to another studio that can perform any unused but prepaid services for clients"; and "[t]ransfer the [Client Information] to" FTF; among other obligations. (Ex. 7, p. 3; Ex. 8, p. 2.)

**H.     Defendants' Conduct Is Irreparably Harming FTF**

71.     Defendants' egregious misconduct is also irreparably harming FTF.

72.     In competing against FTF, Defendants have diverted business opportunities and long-standing FTF clients away from FTF, including, at minimum, the 24 clients that Scott has admitted she continues to service at her Competitive Business.

73.     FTF's brand was built and continues to survive in a highly competitive industry based on the business goodwill it has developed over four decades through personal contacts and

19

dedication to the unique preferences and service-needs of its clients. Upon information and belief, FTF has already lost, and will continue to lose business opportunities, revenue, and clients. FTF will also suffer substantial and compounding harm to their business goodwill if Defendants are not barred from continuing to operate their Competitive Business, including through the misuse of FTF's Confidential Information and Marks.

74. Moreover, Defendants' use of FTF Confidential Information dilutes the secrecy of such information and diminishes FTF's competitive position in the fitness marketplace.

75. Further, Defendants' improper use of the Marks gives consumers the false impression that Evolve Personal Training is either endorsed by or affiliated with FTF, which—in light of its identical focus on individualized personal fitness plans—will cause confusion among reasonable consumers of such services.

76. Upon information and belief, Defendants' inappropriate and prominent use of the Marks has confused the consuming public to such an extent that the public will believe that FTF and Defendants are related parties when they are not.

77. For example, as of February 26, 2024, the address of Evolve Personal Training appears as a Fitness Together Studio, according to Google Maps, when it is not:[3]

---

[3] Google Maps, "Fitness Together," https://www.google.com/maps/place/Fitness+Together/@35.0278928,-80.8511623,17.75z/data=!4m8!3m7!1s0x885682dec9c7f9e9:0x527d11c55d8493b5!8m2!3d35.0280596!4d-80.8501039!9m1!1b1!16s%2Fg%2F1tfrn133?entry=ttu (last visited February 26, 2024).

78.     Google reviews for the address likewise mention Scott as the owner and personal trainer of a Fitness Together Studio, when she is not. Scott's LinkedIn page also describes her as the "Company Owner" of Evolve Personal Training but then describes the business as "Fitness Together Ballantyne . . . a lifestyle inspired brand." Yelp similarly identifies the Ballantyne Studio as "Fitness Together – Ballantyne."[4]

79.     Finally, Defendants' conduct threatens a domino effect through the Franchise System. If Defendants' violations are left unchecked, other franchisees will be emboldened to misappropriate and misuse FTF's Marks and Confidential Information and to compete against FTF, causing serious irreparable harm to the entire franchise model.

80.     As a result of Defendants' improper competition against FTF and misuse of FTF's Confidential Information, Marks, and other improper actions, FTF has been and is continuing to be irreparably harmed.

---

[4] Yelp, "Fitness Together – Ballantyne," https://www.yelp.com/biz/fitness-together-ballantyne-charlotte-2 (last visited February 26, 2024).

81.     As a result of Defendants' prohibited competition against FTF and misuse of FTF's Confidential Information, Marks, and other misconduct, FTF has also suffered damages in an amount to be determined.

82.     As a result of Defendants' conduct, FTF is entitled to injunctive relief, other damages to be proven at trial, and attorneys' fees and costs pursuant to Section U.S.C. § 1836(b)(3)(D); 15 U.S.C. § 1117; C.R.S. §§ 7-74-105; and the Franchise Agreement, §§ 14.7, 15.9.

## CLAIMS FOR RELIEF

### COUNT I
**Breach of Contract against Scott and Tiger Ventures**

83.     FTF reincorporates by reference the foregoing paragraphs of this complaint as though fully set forth herein.

84.     FTF and Tiger Ventures entered into the Franchise Agreement, dated October 31, 2016.

85.     Scott personally guaranteed the Franchise Agreement and thereby agreed to be bound by, and liable for the breach of, each and every provision contained therein.

86.     Hellner agreed to Scott's guaranty and consented to binding the assets of the marital estate to Scott's performance of the guaranty.

87.     FTF terminated the Franchise Agreement on January 11, 2024.

88.     The Franchise Agreement is a valid and binding contract.

89.     Under the Franchise Agreement, Scott operated as management personnel; she had supervisory authority, substantial autonomy, decision-making authority, and was in charge of various business operations.

90. Scott had access to virtually all of FTF's Confidential Information, including its Client Information.

91. The Franchise Agreement recognized the highly confidential, proprietary, and valuable nature of FTF's Confidential Information shared in connection with the franchise relationship, and thus contained robust restrictions designed to safeguard that information, including FTF's Client Information.

92. FTF fully performed all of its obligations under the Franchise Agreement.

93. Scott and Tiger Ventures breached the Franchise Agreement by, at minimum:

a. competing against FTF immediately after the termination of the Franchise Agreement in the same location as the Ballantyne Studio;

b. forming, operating, or having a direct interest in a Competitive Business within two years after the termination of the Franchise Agreement;

c. diverting Studio-related business to a Competitive Business within two years after the termination of the Franchise Agreement;

d. copying, misappropriating, and using FTF's Confidential Information, including its Client Information;

e. using and displaying FTF's Marks after the termination of the Franchise Agreement without authorization;

f. refusing to pay royalties and other fees owed under the terms of the Franchise Agreement, totaling at least $21,689.48; and

g. in such other ways as may be revealed through discovery or proven at trial.

94. As a direct and proximate result of these breaches, FTF has suffered and continues to suffer damages.

95. FTF is entitled to an award of actual damages resulting from Scott's and Tiger Ventures' breaches of the Franchise Agreement, in an amount to be proven at trial.

96.     In addition, FTF is entitled to an award of attorneys' fees incurred in enforcing the Franchise Agreement. Ex. 4, §§ 14.7, 15.9.

97.     Unless Scott and Tiger Ventures are barred from continuing to breach their contractual obligations, FTF will continue to suffer immediate and irreparable injury and harm as specifically provided for in the Franchise Agreement, including in the form of substantial competitive injury, loss of existing and prospective customers, and loss of goodwill and present and future economic loss. FTF is thus entitled to preliminary and permanent injunctive relief.

**COUNT II**
**Misappropriation of Trade Secrets – Defend Trade Secrets Act, 18 U.S.C. §§ 1836, et. seq.**
**against all Defendants**

98.     FTF reincorporates by reference the foregoing paragraphs of this complaint as though fully set forth herein.

99.     FTF has invested substantial time and effort to maintain the secrecy of FTF's Confidential Information through contractual protections and also by storing such information in highly-confidential, password-protected databases.

100.    Scott and Tiger Ventures were granted access to FTF's Confidential Information as part of the franchise relationship, and conditioned on their obligations to protect the confidentiality of such information, which duties FTF believed Scott and Tiger Ventures would meet.

101.    FTF derives tremendous economic value from the Confidential Information to which Scott and Tiger Ventures had access while operating the Ballantyne Studio under the Franchise Agreement, but which is not generally known to the public or to other persons who could obtain economic value from its disclosure or use.

24

102.     FTF's Confidential Information relates to FTF's fitness and nutrition products and services used in interstate commerce.

103.     Defendants have misappropriated and used FTF's trade secrets in the form of FTF's Confidential Information, including but not limited to FTF's Client Information, and other information as may be revealed through discovery, without FTF's authorization.

104.     Defendants' misappropriation was accomplished through one or more improper means, including a breach of a duty to maintain the secrecy of FTF's Confidential Information.

105.     Defendants have misappropriated FTF's Confidential Information for the purpose of using and exploiting such information for their own interests, without license or permission from FTF.

106.     As a direct result of Defendants' misappropriation of FTF's Confidential Information, FTF has or will suffer damages under 18 U.S.C. § 1836(b)(3)(B)(i) and/or (ii).

107.     Defendants' misappropriation was willful and/or malicious; thus, FTF is entitled to an award of exemplary damages under 18 U.S.C. § 1836(b)(3)(C) and an award of attorneys' fees under 18 U.S.C. § 1836(b)(3)(D).

108.     Defendants' misappropriation and use of FTF's Confidential Information is causing and will continue to cause FTF to suffer irreparable harm, as set forth in the Franchise Agreement, and damages in an amount to be proven at trial. FTF is likewise entitled to injunctive relief against Defendants for their misappropriation pursuant to 18 U.S.C. § 1836(b)(3)(A) and the Franchise Agreement.

## COUNT III
**Misappropriation of Trade Secrets – Colorado Uniform Trade Secrets Act against all Defendants**

109.　FTF reincorporates by reference the foregoing paragraphs of this complaint as though fully set forth herein.

110.　FTF has invested substantial time and effort to maintain the secrecy of FTF's Confidential Information through not only contractual protections, but also by storing such information in highly-confidential, password-protected databases.

111.　Scott and Tiger Ventures were granted access to FTF's Confidential Information because they were under duties of confidentiality to FTF, which duties FTF believed Scott and Tiger Ventures would meet.

112.　FTF derives tremendous economic value from the Confidential Information to which Scott and Tiger Ventures had access while operating the Ballantyne Studio under the Franchise Agreement, but which is not generally known to the public or to other persons who could obtain economic value from its disclosure or use.

113.　Defendants have misappropriated and used FTF's trade secrets in the form of its Confidential Information including but not limited to FTF's Client Information as may be revealed through discovery, without FTF's authorization.

114.　Defendants' misappropriation was accomplished through one or more improper means, including a breach of a duty to maintain the secrecy of FTF's Confidential Information.

115.　Defendants have misappropriated FTF's Confidential Information for the purpose of using and exploiting such information for their own interests, without license or permission from FTF.

116.    As a direct result of Defendants' use and misappropriation of FTF's Confidential Information, FTF has suffered and will continue to suffer irreparable harm, as set forth in the Franchise Agreement, and damages.

117.    Defendants' conduct entitles FTF to injunctive relief, damages in an amount to be determined at trial, disgorgement and other equitable relief, and attorneys' fees pursuant to C.R.S. §§ 7-74-103, 105.

118.    Because Defendants' misappropriation was willful and/or malicious, FTF is entitled to exemplary damages pursuant to C.R.S. §§ 7-74-104.

**COUNT IV**
**Federal Trademark Infringement – 15 U.S.C. §§ 1114 against all Defendants**

119.    FTF reincorporates by reference the foregoing paragraphs of this complaint as though fully set forth herein.

120.    FTF Marks are inherently distinctive and/or have established secondary meaning as evidenced by their registrations with the USPTO.

121.    Defendants have engaged in the acts set forth above in bad faith to cause confusion and to deceive and defraud both the public and consumers of FTF's services.

122.    Defendants have, without FTF's consent, used in commerce a reproduction, counterfeit, copy, or colorable imitation of the FTF Marks in connection with the marketing of Defendants' fitness-related business.

123.    Defendants' unauthorized use of the Marks is likely to cause, and has caused, confusion and mistake, and is likely to deceive, and has deceived, the consuming public as to the source, relatedness, affiliation, connection, or association of FTF and its products and services with those of Defendants.

124.    Defendants have used the Marks knowing that it would cause confusion or mistake, or with the intent to deceive.

125.    Defendants' actions constitute violations of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

126.    Defendants' conduct has and will continue to cause confusion to, mistake by, and deception of customers as to the relatedness and source of Defendants' services and/or its relationship with FTF.

127.    As a direct and proximate result of Defendants' infringement, and as set forth in the Franchise Agreement, FTF has suffered and continues to suffer irreparable harm for which it has no adequate remedy at law and which will continue to cause irreparable harm to FTF unless enjoined by this Court.

128.    Defendants' conduct entitles FTF to injunctive relief and damages, including in the form of Defendants' profits and the costs of the action including its reasonable attorneys' fees and costs pursuant to 15 U.S.C. §§ 1114, 1115, 1116, and 1117.

129.    Defendants' deliberate and intentional infringement makes this an exceptional case under 15 U.S.C. § 1117 and allows for the award of attorneys' fees and treble damages.

## COUNT V
### Trademark Infringement – Colorado Common Law against all Defendants

130.    FTF incorporates by reference the foregoing paragraphs of this complaint as though fully set forth herein.

131.    FTF is the owner of protectable rights in and to the FTF Marks in connection with its fitness-related products and services.

132.    The Marks have achieved secondary meaning through FTF's continued and widespread use for over four decades in connection with FTF's fitness-related products and services.

133.    FTF has established goodwill associated with these Marks and Defendants are treading upon FTF's goodwill through unauthorized and unlicensed use of the FTF's Marks.

134.    Defendants' intentional unauthorized use of the Marks for its closely related fitness products and services has caused, and unless enjoined is likely to continue to cause, confusion, mistake, or to deceive the purchasing public to the damage of FTF.

135.    Defendants' intentional unauthorized use of Marks, in connection with the promotion and sale of their closely related fitness products and services constitutes an infringement of FTF's preexisting and long-standing rights in the Marks which FTF acquired in good faith.

136.    By refusing to discontinue its use of the Marks, Defendants have willfully, deliberately, maliciously, intentionally, knowingly, and in bad faith violated, and continue to violate, the common law rights of FTF.

137.    Defendants' acts of common law trademark infringement have caused, and will continue to cause, as set forth in the Franchise Agreement, irreparable harm to FTF. They have also resulted in, and will continue to result in, unjust enrichment to Defendants unless enjoined by this Court from further violations of FTF's common law rights.

138.    Defendants' conduct entitles FTF to injunctive relief and damages in an amount to be proven at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, FTF requests that the Court enter judgment in its favor and to grant the following relief:

1. Determination that Scott and Tiger Ventures:

   a. violated the Franchise Agreement, entitling FTF to legal, equitable, and injunctive relief.

2. Determination that all Defendants:

   a. misappropriated FTF's proprietary, confidential, and trade secret information in violation of state and federal law, entitling FTF to legal, equitable, exemplary, and injunctive relief; and

   b. infringed upon FTF's registered and common law trademarks in violation of the trademark laws of the United States and Colorado, entitling FTF to legal, equitable, exemplary, and injunctive relief.

3. Preliminary and permanent injunctions enforcing the terms of the Franchise Agreement against Defendants and enjoining Defendants from:

   a. operating, being employed by, providing services to, promoting, advertising, or participating in any other manner whatsoever in Tiger Ventures, Evolve Personal Training, Inc., and Ballantyne Fitness, or any other competitor of Plaintiff, as set forth in the Franchise Agreement;

   b. copying, disclosing, or using in any other manner whatsoever FTF's Confidential Information , including FTF's Client Information and data, as defined in the Franchise Agreement; and

   c. displaying, infringing upon, or using in any other matter whatsoever FTF's common law and registered "Fitness Together" trademarks or any variation thereof, as prohibited by the Franchise Agreement.

4. An award to FTF of damages incurred as a result of Defendants' wrongful actions described above, including but not limited to the recovery of actual, compensatory, and exemplary damages, unjust enrichment, and disgorgement, in an amount to be determined at trial;

5. An order directing Defendants to produce an accounting of all profits, benefits, and other monies obtained by them arising out of the wrongful actions described above;

6.   An award to FTF of all allowable costs, disbursements, and penalties in this action as the Court deems proper;

7.   An award of prejudgment interest, post-judgment interest, costs, and expenses;

8.   An award to FTF of all reasonable attorneys' fees and costs to the extent such may be allowable by law or contract; and

9.   Such further relief in law or in equity to which FTF may show it is justly entitled.


Dated:  March 5, 2024.                          Respectfully submitted,



                                        *s/ Michael R. Krantz*
                                        Melissa L. Romero
                                        Michael R. Krantz
                                        Wheeler Trigg O'Donnell LLP
                                        370 Seventeenth Street, Suite 4500
                                        Denver, CO 80202
                                        Telephone:   303.244.1800
                                        Facsimile:    303.244.1879
                                        Email:   romero@wtotrial.com
                                                     krantz@wtotrial.com

                                        Attorneys for Plaintiff,
                                        Fitness Together Franchise, L.L.C.