UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:24-cv-00606-GPG-SBP

FITNESS TOGETHER FRANCHISE, LLC,

       Plaintiff,

v.

TIGER VENTURES, INC.;
BALLANTYNE FITNESS SOLUTIONS, INC.;
CHAVANNE SCOTT; and
CLIFTON HELLNER,

       Defendants.

---

**PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND
PRELIMINARY INJUNCTION**

---

Plaintiff Fitness Together Franchise, LLC ("FTF") submits this Motion for Temporary Restraining Order and Preliminary Injunction against Tiger Ventures, Inc. ("Tiger Ventures"); Ballantyne Fitness Solutions, Inc. ("Ballantyne Fitness"); Chavanne Scott; and Clifton Hellner (collectively, "Defendants"), pursuant to F.R.C.P. 65 and D.C.Colo.L.CivR 65.1(a).[1]

## CERTIFICATE OF CONFERRAL – D.C.COLO.L.CIVR 7.1(a), 65.1(a)

FTF's counsel certifies that he attempted to confer with Defendants regarding this Motion, including by letter and email. (Movant's Appx., pp. 149 – 271 – Ex. 13, Cease and Desist Letter; Ex. 14, Cease and Desist Email.) Several weeks later, Scott generally denied some, but not all, of the allegations against Defendants, leaving FTF no choice but to seek the relief in this motion. FTF will provide Defendants copies of all filings and orders in the action by email and overnight carrier. FTF has thus fulfilled the requirements of Rule 65(b) and D.C.Colo.L.CivR 65.1 to proceed *ex parte*, if necessary.

## INTRODUCTION

FTF, a personal training fitness studio franchise, seeks injunctive relief against its former franchisee (Tiger Ventures), the franchisee's owner (Scott) and others assisting Scott (Hellner and Ballantyne Fitness) who currently are misappropriating FTF's trademarks and trade secrets to unlawfully compete against FTF.

---

[1] To comply with all applicable rules, FTF is simultaneously requesting a temporary restraining order and preliminary injunction. The first request is needed, given the immediate harm FTF faces (as set forth below), and the fact that FTF has attempted to confer with and notify Defendants but has received no response. Indeed, F.R.C.P. 65 and D.C.Colo.L.CivR 65.1, permit the issuance of a temporary restraining order before, and in addition to, a preliminary injunction to last the pendency of the case. If this Court denies FTF's request for a temporary restraining order, FTF requests that this Court consider FTF's simultaneous request for a preliminary injunction, including by holding an expedited hearing as the Court's calendar allows.

Scott, through her entity, Tiger Ventures, operated a Fitness Together Studio pursuant to an FTF franchise agreement until January 2024, when FTF terminated it because they failed to comply with the franchise agreement's terms. While in operation, Scott and Tiger Ventures benefited from FTF's unique Fitness Together® brand and goodwill, gaining the right to access and use FTF's trademarks and trade secrets, including FTF's confidential client data. To protect such information and goodwill, Scott and Tiger Ventures were required, following termination of the franchise agreement, to cease using FTF's trade secrets and trademarks and to refrain from having any interest in a competing business within a three-mile radius of their Studio for two years.

Nonetheless, Scott and Tiger Ventures have not complied with their contractual obligations. Instead, along with Hellner (Scott's spouse) and their new entity (Ballantyne Fitness), they are operating a competing fitness business called Evolve Personal Training Inc. ("Evolve Personal Training") out of the same location and offering the same services as the prior Fitness Together Studio, using FTF's misappropriated trade secrets and trademarks to do so.

Defendants' misconduct violates the franchise agreement and state and federal law and is causing FTF imminent, irreparable harm. FTF thus requests an emergency hearing and/or the immediate issuance of an injunction to restore the status quo as it was before Defendants began misappropriating FTF's trade secrets, misusing FTF's trademarks, and violating their contractual obligations.

## STATEMENT OF FACTS[2]

**A.    FTF Is a World-Leading Personal Training Studio Franchise System With Unique Methods and Trademarks**

---

[2] These facts are likewise set forth in FTF's Complaint, filed simultaneously herewith, ¶¶ 14 – 82.

FTF is one of the world's largest personal training fitness franchise with approximately 100 studio locations nationwide (the "Studios"). (Movant's Appx., p. 3 – Ex. 1, Moore Affidavit, ¶ 7.) FTF is dedicated to helping clients meet their fitness and health goals through a customized fitness experience in a private-suite training setting. (Movant's Appx., p. 3 – Ex. 1, ¶ 6.)

For over 25 years, FTF's franchise methods have included the regular use of the "Fitness Together" trademark, together with other valuable trademarks, service marks, trade names, symbols, emblems, slogans, insignias, designs, and logos (together, the "Marks") for use in establishing and promoting FTF's Studios and to identify and distinguish FTF's fitness and nutrition services and programs from those of others.

FTF owns federal trademark and service mark registrations for its Marks with the United States Patent and Trademark Office ("USPTO"), including federal registrations for FITNESS TOGETHER (words only) (Movant's Appx., p. 21 – Ex. 2, USPTO Trademark Registration No. 2,373,930), FITNESS TOGETHER 1 CLIENT 1 TRAINER 1 GOAL (& design) (Movant's Appx., p. 23 – Ex. 3, USPTO Trademark Registration No. 3,761,267), FITNESS TOGETHER (& design) (Movant's Appx., p. 25 – Ex. 4, USPTO Trademark Registration No. 3,760,855).

FTF grants franchisees the right to establish and operate Studios under FTF's Marks according to FTF standards, methods, techniques, and operating procedures ("System Standards"), which constitute FTF's unique franchise system (the "Franchise System"). (Movant's Appx., p. 4 – Ex. 1, ¶ 14.) FTF also grants franchisees access to FTF's trade secrets, including FTF's client data, for the sole purpose of operating their Studios. (Movant's Appx., pp. 4, 6 – Ex. 1, ¶¶ 14, 21.) FTF has invested substantial time,

money, and effort developing its System Standards and the goodwill associated with the Marks. (Movant's Appx., p. 4 – Ex. 1, ¶ 12.)

> **B.      FTF Enters Into a Franchise Agreement With Tiger Ventures**

In October 2016, Tiger Ventures entered the FTF franchise system when it purchased an existing Fitness Together Studio in Charlotte, North Carolina (the "Ballantyne Studio") and then entered into a franchise agreement with FTF ("Franchise Agreement"). (Movant's Appx., p. 27 – Ex. 5, Franchise Agreement.) Scott personally guaranteed the Franchise Agreement and is therefore bound by each and every provision it contained (the "Personal Guarantee"). (Movant's Appx., p. 84-86 – Ex. 5.) Hellner consented to the Personal Guarantee, binding marital assets to Scott's compliance. (Movant's Appx., p. 87 – Ex. 5.)

> **C.      The Franchise Agreement Requires Defendants to Protect and Maintain the Secrecy of FTF's Trade Secrets and Prohibits Defendants From Competing Against FTF**

Under the Franchise Agreement, Tiger Ventures were obligated pay monthly royalties and other fees. (Movant's Appx., pp. 36-38 – Ex. 5, §§ 4.2, 4.4, 4.6, 4.7, 4.8, 4.11.) In exchange, among other benefits, they gained the right to use FTF's Marks to operate the Ballantyne Studio. To protect FTF's exclusive rights to its Marks and resulting goodwill, the Franchise Agreement provided:

- The Marks "remain under . . . sole and exclusive ownership and control" of FTF and Scott and Tiger Ventures do "not acquire any right, title, or interest in the Marks except for the right to use the Marks in operation of [the Ballantyne] Studio." (Movant's Appx., p. 43 – Ex. 5, § 6.1.)
- Defendants may not use "any Mark as part of any Entity name . . . [or] in connection with unauthorized services or products or in any other manner not expressly authorized by [FTF] in writing. (Movant's Appx., p. 43 – Ex. 5, § 6.2.)

The Franchise Agreement also allowed Scott and Tiger Ventures to access and use FTF's trade secrets, Proprietary Assets,[3] and System Standards. ("Confidential Information") (Movant's Appx., pp. 69-71 – Ex. 5, §§ 12.4, 12.5.)

The Franchise Agreement expressly included, as Confidential Information, all client information of all Fitness Together Studios in the Franchise System, including the Ballantyne Studio ("Client Information"), which includes all client contact information; buying habits and preferences; medical and health information; customized fitness and nutrition programs; and other information the client discloses. (Movant's Appx., p. 6 – Ex. 1, ¶¶ 22-23; Movant's Appx., pp. 51-52, 64, 69-71 – Ex. 5, §§ 7.5(m), 10.5 12.4.) FTF has the sole right to all Client Information. (Movant's Appx., pp. 69-71 – Ex. 5, § 12.4.)

FTF has invested substantial time and effort to maintain the secrecy of FTF's Confidential Information by storing it in password-protected databases and strictly regulating its use in the Franchise Agreement, including provisions:

- requiring Scott and Tiger Ventures "implement all administrative, physical, and technical safeguards necessary to protect" FTF's Client Information (Movant's Appx., pp. 49-50 – Ex. 5, § 7.5(e));
- prohibiting Defendants from using FTF's Confidential Information outside the operation of the Ballantyne Studio or in any other business or capacity (Movant's Appx., pp. 69-71 – Ex. 5, § 12.4);

---

[3] Under the Franchise Agreement, FTF's "Proprietary Assets" include:

The distinguishing characteristics of the Franchise System includ[ing] the Marks . . . signage and equipment, copyrights, titles, symbols, emblems, . . . manuals, techniques, rules, ideas, philosophies, . . . course materials, the confidential operations manual other manuals, technical bulletins, other written or videotaped materials and other materials and documents related to the operations of your Studio . . . the System Standards, . . . the Nutrition Together™ guide, the Fitness Program, . . . and other aspects of the Franchise System we have developed and designated for use within the Franchise System. (Movant's Appx., p. 32 – Ex. 5, Franchise Agreement, ¶ C.)

- requiring Defendants to adopt and implement all procedures that FTF proscribes to prevent the unauthorized use or disclosure of Confidential Information (Movant's Appx., pp. 69-71 – Ex. 5, § 12.4); and
- following termination, requiring Defendants to immediately and permanently cease to use, in any manner whatsoever, any of FTF's Confidential Information. (Movant's Appx., pp. 63, 71 – Ex. 5, §§ 10.4, 12.5.)

To further prohibit the misuse of FTF's Confidential Information, the Franchise Agreement prohibits Scott, Tiger Ventures, and Hellner (as a "Bound Party,") from having any interest in a "Competitive Business,"[4] during or for two years following, the Franchise Agreement's term. (Movant's Appx., pp. 68-69 – Ex. 5, §§ 12.1-12.2)

### D. Scott and Tiger Ventures Violate the Franchise Agreement and FTF Terminates It

Despite these contractual obligations, in June 2023, Scott and Tiger Ventures unilaterally stopped paying all required fees and royalties to FTF. (Movant's Appx., p. 8 – Ex. 1, ¶ 34.) As a result, FTF notified Scott and Tiger Ventures they were in default ("Default Notice"). (Movant's Appx., pp. 108-110 – Ex. 6, Default Notice, p. 1.)

At Scott and Tiger Ventures' request, FTF allowed Scott and Tiger Ventures to enter into a three-month payment plan. But Scott and Tiger failed to comply with the plan. (Movant's Appx., p. 9 – Ex. 1, ¶¶ 36-37, 39-41; Movant's Appx., pp. 112-115 – Ex. 7, Payment Plan.) As a result, on January 11, 2024, following numerous attempts to accomodate Scott and Tiger Ventures, FTF terminated the Franchise Agreement. (Movant's Appx., p. 10 – Ex. 1, ¶ 46; Movant's Appx., pp. 117-124 – Ex. 8, Termination Confirmation; Movant's Appx., pp. 126-130 – Ex. 9, Termination Notice.) In a letter confirming termination, FTF reminded Scott and Tiger Ventures of their post-termination

---

[4] "Competitive Business" is defined as any one-on-one or personal small group physical fitness studio or any other physical fitness or nutrition service business, or any business offering or selling . . .  services that are the same as, similar to, or competitive with the Franchise System or other Studios. (Movant's Appx., pp. 68-69 – Ex. 5, § 12.1)

obligations, including that they must immediately: "Cease identifying . . . as a franchisee of" FTF; "Cease using any of the Marks and Proprietary Assets"; and  "Transfer the [Client Information] to" FTF. (Movant's Appx., pp. 127-128 – Ex. 9, Termination Notice.)

### E.    Defendants Operate a Competitive Business in the Same Location Using FTF's Trade Secrets and Trademarks

Following termination, Defendants began flagrantly breaching the Franchise Agreement. FTF has recently learned that Defendants have opened a Competitive Business, Evolve Personal Training, out of the Ballantyne Studio location using FTF's Marks and Confidential Information without FTF's consent. (Movant's Appx., pp. 10-14 – Ex. 1, ¶¶ 50-66; Movant's Appx., p. 132 – Ex. 10, Scott Email (showing Evolve Personal Training under Scott's email signature); Movant's Appx., p. 136 – Ex. 11, Facebook Page (showing Evolve Personal Training at the Ballantyne Studio address)).

The website for Evolve Personal Training reflects that Scott is the owner and describes the fitness services offered, which are the same as those offered by Fitness Together Studios: "PRIVATE 1 ON 1 PERSONAL TRAINING, SEMI-PRIVATE/SMALL-GROUP FITNESS COACHING." (Movant's Appx., p. 139 – Ex. 12, Evolve Personal Training Website.) The website adds that it offers "a comprehensive approach to . . . enhanced health and fitness" and "a customized and highly individualized service to meet the unique needs of our clients." (Movant's Appx., p. 139 – Ex. 12.)

FTF has also recently discovered that Defendants may have started operating this Competitive Business *during* the term of the Franchise Agreement. On June 23, 2023, shortly after Scott and Tiger Ventures stopped paying royalties and fees, Scott and Hellner created a separate entity called Ballantyne Fitness, which is now doing business as Evolve Personal Training. (Movant's Appx., pp. 14-15 – Ex. 1, ¶¶ 61-62.)

Further, Evolve Personal Training is operating under FTF's Marks (Movant's Appx., pp. 13-14 – Ex. 1, ¶ 58) and improperly using FTF's Client Information—none of which has been authorized by FTF. (Movant's Appx., p. 15 – Ex. 1, ¶ 65.)




To the contrary, after FTF terminated the Franchise Agreement and requested that Scott and Tiger Ventures return and cease using all Client Information, Scott refused, stating that she "had to set up a new business structure to service [certain existing customers]" and will do so out of "the former FT Ballantyne [Studio] location." She likewise expressed her intent to take from FTF "at least 24 Clients."  (Movant's Appx., pp. 133-134 – Ex. 10.) FTF has also discovered that, following termination, Scott improperly forwarded Client Information from her Fitness Together email to her personal email. (Movant's Appx., p. 15 – Ex. 1, ¶ 65).

After discovering these flagrant violations, FTF sent Defendants a cease and desist letter, asking them to cease all such misconduct. (Movant's Appx., pp. 149 – 271 – Ex. 13; Ex. 14 .) Eventually, Defendants generally denied some, but not all, of the allegations, leaving FTF no choice but to seek injunctive relief.

**F.    Defendants' Conduct is Irreparably Harming FTF**

8

The Franchise Agreement makes clear that FTF's Marks and Confidential Information have "valuable goodwill . . ., that their protection and maintenance are essential to [FTF], and that any unauthorized use or disclosure of the[m] . . . will result in irreparable harm to [FTF]." (Movant's Appx., pp. 69-71 – Ex. 5, § 12.4.) Scott and Tiger Ventures thus agreed that any violation of the Franchise Agreement's restrictive covenants, including the noncompetition covenant, "will result in irreparable harm to [FTF]" and allowed FTF to prevent such harm by seeking injunctive relief. (Movant's Appx., pp. 69-71, 75 – Ex. 5, §§ 12.4, 14.8.)

FTF's brand was built on the business goodwill it has developed over four decades through its customized fitness and nutrition regime. (Movant's Appx., p. 17 – Ex. 1, ¶ 74.) By unlawfully competing against FTF and improperly using its Confidential Information and Marks, Defendants are diluting the secrecy and value of FTF's trade secrets and Marks, and depriving FTF of business opportunities and business goodwill that cannot be estimated. (Movant's Appx., pp. 17-18 – Ex. 1, ¶¶ 72-80.)

By operating in the same location as the former Ballantyne Studio, Defendants are giving consumers the false and confusing impression that Evolve Personal Training is either endorsed by or affiliated with FTF, when it is not. (Movant's Appx., p. 17 – Ex. 1, ¶ 71.) For example, the address for Evolve Personal Training appears as a Fitness Together Studio, according to Google Maps, when it is not. (Movant's Appx., p. 16 – Ex. 1, ¶ 69.) Scott's LinkedIn page also notes her as the "Company Owner" of Evolve Personal Training but then describes the business as "Fitness Together Ballantyne." (Movant's Appx., p. 16 – Ex. 1, ¶ 70.) Yelp similarly identifies Evolve Personal Training as "Fitness Together – Ballantyne." (Movant's Appx., p. 16 – Ex. 1, ¶ 70.)

Further, Defendants' misconduct threatens a domino effect of irreparable harm to the entire Franchise System. If Defendants are permitted to take advantage of the benefits of FTF's brand, goodwill, Marks, and Confidential Information, cease paying royalties and fees, abandon the franchise, and compete against FTF, other franchisees are likely to do the same, thereby dealing grave harm to FTF's entire franchise model. (Movant's Appx., p. 18 – Ex. 1, ¶ 81.) An injunction is needed to curb such increasing and unquantifiable harm. (Movant's Appx., p. 18 – Ex. 1, ¶ 80.)

## **LEGAL STANDARD**

Emergency injunctive relief preserves the status quo and the relative positions of the parties until a trial on the merits can be held. *See Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258–59 (10th Cir. 2005). Under Rule 65, the Court may grant injunctive relief where the movant demonstrates: (1) a likelihood of success on the merits; (2) a likelihood that the movant will suffer irreparable harm without relief; (3) the balance of equities favors the movant; and (4) the injunction is in the public interest. *DoubleClick Inc. v. Paikin*, 402 F. Supp. 2d 1251, 1255 (D. Colo. 2005); *People's Tr. Fed. Credit Union v. Nat'l Credit Union Admin. Bd.*, 350 F. Supp. 3d 1129, 1138 (D.N.M. 2018) (TRO and PI requirements are the same); Fed. R. Civ. P. 65. These factors are all satisfied here.

## **ARGUMENT**

## I.    **INJUNCTIVE RELIEF WILL PRESERVE THE STATUS QUO**

The status quo means the "last peaceable position" existing between the parties before the dispute developed. *Dry Cleaning To-Your-Door, Inc. v. Waltham Ltd. Liab*. Co., No. 07-cv-01483-WDM-MJW, 2007 WL 4557832, at *2 (D. Colo. Dec. 20, 2007). Here, the last peaceable position existed before Defendants began unlawfully competing with FTF and using its Marks and trade secrets without FTF's consent. An injunction barring

this conduct will preserve that status quo and immediately prevent the harm already done
to FTF from compounding. *See id.* (last peaceable status was when defendant was
"bound by the non-compete provision[;] . . . an injunction prohibiting competition would
[maintain] the status quo"); *DoubleClick Inc.*, 402 F. Supp. 2d at 1256 (same); *O Centro
Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 1013 (10th Cir. 2004)
(McConnell, J., concurring).

## II.    FTF IS LIKELY TO SUCCEED ON THE MERITS

FTF has asserted claims for breach of contract, trade secret misappropriation, and
trademark infringement and is likely to succeed on each. To demonstrate a likelihood of
success on the merits, a plaintiff must "present 'a prima facie case showing a reasonable
probability that [it] will ultimately be entitled to the relief sought.'" *Salt Lake Tribune Pub.
Co., LLC v. AT&T Corp.*, 320 F.3d 1081, 1100 (10th Cir. 2003) (internal citation omitted).
And where the three "harm" factors tip "decidedly" in the moving party's favor, the
"probability of success requirement" is relaxed further; the moving party "need only show
questions going to the merits so serious, substantial, difficult and doubtful, as to make
them a fair ground for litigation." *Heidemann v. S. Salt Lake City*, 348 F.3d 1182, 1189
(10th Cir. 2003) (internal citation and quotation omitted). FTF satisfies this burden.

### A.    FTF Has a Likelihood of Success on its Breach of Contract Claim

For breach of contract, FTF must show (1) a binding and valid contract; (2) that
FTF substantially performed; (3) that Scott and Tiger Ventures failed to perform; and
(4) resulting damage. *Western Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo.
1992).[5] FTF will establish each element.

---

[5] Colorado law applies pursuant to § 14.1 of the Franchise Agreement. (Movant's Appx., pp.
71-72 – Ex. 5, § 14.1.)

First, the Franchise Agreement is valid and enforceable, and FTF has performed its obligations thereunder. Scott is a guarantor of the Franchise Agreement and is bound by each obligation contained therein. (Movant's Appx., pp. 84-86 – Ex. 5)

Although Colorado public policy generally disfavors covenants not to compete, the statutory prohibition does not apply to (1) executive management personnel or (2) contracts for the protection of trade secrets.[6] Colo. Rev. Stat. § 8-2-113(2)(b),(d) (2022). Both statutory exceptions apply here—Scott served as the sole owner of Tiger Ventures (Movant's Appx., p. 83 – Ex. 5), and the non-compete provisions are designed to protect FTF's trade secrets. (Movant's Appx., pp. 68-69 – Ex. 5, §§ 12.1-12.2.) The Franchise Agreement expressly recognizes the highly confidential, proprietary, and valuable nature of FTF's trade secrets, including all Confidential Information, shared in connection with the franchise relationship, and contain robust restrictions designed to safeguard it. (Movant's Appx., pp. 47-55, 63-64, 68-71 – Ex. 5, §§ 7.5, 7.6, 10.4, 12.1-12.2, 12.4, 12.5.) The Franchise Agreement's provisions protect against FTF's concern that a franchisee could use FTF's trade secrets to harm FTF after departing. (*Id.*) As a result, the non-compete provisions in the Franchise Agreement are enforceable. *See Fitness Together Franchise, L.L.C. v. EM Fitness, L.L.C.*, No. 1:20-cv-02757-DDD-STV, 2020 WL 6119470, at *9 (D. Colo. Oct. 16, 2020) (finding FTF's non-compete enforceable because defendant was the franchisees' owner and the franchise agreements were intended to protect trade secrets); *Core Progression Franchise LLC v. O'Hare*, No. 21-cv-0643-WJM-NYW, 2021 WL 1222768, at *7 (D. Colo. Apr. 1, 2021).

---

[6] On August 10, 2022, Colorado amended the statute, but the amendment does not apply to covenants not to complete entered into prior to the effective date of the act. House Bill 22-1317, June 8, 2022.

Non-competition provisions must also be reasonable in duration and scope. *Reed Mill & Lumber Co. v. Jensen*, 165 P.3d 733, 736 (Colo. App. 2006). Here, the Franchise Agreement limits the non-compete to two-years and a three-mile-radius (Movant's Appx., p. 69 – Ex. 5, § 12.2), which falls within the scope of reasonableness. *Core Progression Franchise LLC*, 2021 WL 1222768, at *7 (25-mile radius for one year); *Fitness Together Franchise, L.L.C.,* 2020 WL 6119470, at *9 (three-mile radius for one year); *Harrison v. Albright*, 577 P.2d 302, 305 (Colo. App. 1977) (100-mile radius for five years).

Second, Scott and Tiger Ventures' conduct in misusing FTF's Marks and Confidential Information to compete against FTF, violates multiple provisions of the Franchise Agreement, including:

- Defendants cannot use "any Mark. . . in connection with unauthorized services or products or in any other manner not expressly authorized by [FTF] in writing" (Movant's Appx., p. 43 – Ex. 5, § 6.2);
- For two years, Defendants cannot compete against FTF within a three-mile radius of the Studio or any other Fitness Together Studio (Movant's Appx., p. 69 – Ex. 5, § 12.2);
- Defendants cannot use FTF's Confidential Information, including Client Information, in any other business and capacity (Movant's Appx., pp. 69-70 – Ex. 5, § 12.4); and
- Defendants must cease "doing anything" that would indicate an affiliation with FTF post-termination and abide by all restrictive covenants. (Movant's Appx., pp. 63-64 – Ex. 5, § 10.4.)

Third, as further explained below, by continuing to violate the Franchise Agreement, Defendants are causing severe unquantifiable harm, including by sabotaging FTF's client relationships, diverting customers and business away from FTF, damaging its business goodwill, and creating domino effect throughout the franchise system.

**B.    FTF's Trade Secret Misappropriation Claims Are Also Likely to Succeed**

Under the Colorado Uniform Trade Secret Act ("CUTSA") and federal Defend

Trade Secrets Act ("DTSA"), trade secret misappropriation occurs when a person

discloses or uses without consent another's trade secrets obtained by improper means,

including through breach of a duty to maintain their secrecy. 18 U.S.C. § 1839(5)-(6);

C.R.S. § 7-74-102(1)-(2); *see also Mineral Deposits Ltd. v. Zigan*, 773 P.2d 606, 608

(Colo. App. 1988). Under Colorado and federal law, confidential and proprietary client

information can constitute trade secrets. *See Hertz v. Luzenac Grp.*, 576 F.3d 1103,

1113-1114 (10th Cir. 2009) (customer lists can be trade secrets under CUTSA); *MSC

Safety Sols., LLC v. Trivent Safety Consulting, LLC*, No. 19-cv-00938-MEH, 2019 WL

5189004, at *7 (D. Colo. Oct. 15, 2019) (same under DTSA). This is particularly true

where, like here, client information consists of non-public data such as individualized

customer preferences with particularized value. *See Fitness Together Franchise L.L.C.*,

2020 WL 6119470, at *10 (FTF's client lists constitute trade secrets under Colorado and

federal law); C.R.S. § 7–74–102(4); 18 U.S.C. § 1839(3)(B); *Mentor Worldwide LLC v.

Craigo*, No. 12-cv-00776-REB-MJW, 2012 WL 1439498, at *3 (D. Colo. Apr. 26, 2012).

FTF has undergone substantial efforts to protect its Client Information, which

includes clients' personal information, medical information, trainer notes, fitness and

nutrition preferences, habits, workouts, and goals, and other customized data particular

to FTF's services that are not publicly available. (Movant's Appx., p. 6 – Ex. 1, ¶¶ 23.) As

set forth above, to protect such data, FTF only allows franchisees to access Client

Information to operate their Studios, requires them to return all Client Information post

termination, stores Client Information in password-protected databases, and strictly

enforces numerous other protective contractual provisions. (Movant's Appx., pp. 6-7 –

Ex. 1, ¶¶ 21, 24, 25, 27; Movant's Appx., pp. 47-55, 63-64, 68-71 – Ex. 5, §§ 7.5, 7.6,

10.4, 12.1-12.2, 12.4, 12.5.) Any dissemination of FTF's Client Information to its competitors causes substantial and irreparable harm to FTF given the highly competitive nature of the fitness industry. (Movant's Appx., pp. 7, 17-18 – Ex. 1, ¶¶ 28-29, 72-80.) *See Blue Star Land Servs., LLC v. Coleman*, No. CIV-17-931-R, 2017 WL 6210901, at *5-6 (W.D. Okla. Dec. 8, 2017) (finding the trade secret had economic value where defendant functioned "in a highly competitive market").

Despite FTF's efforts, Defendants are misusing FTF's Client Information. (Movant's Appx., pp. 14-15 – Ex. 1, ¶¶ 60-66.) They also obtained these trade secrets despite a duty to maintain their secrecy under the Franchise Agreement to unlawfully compete against FTF.

FTF is likely to prevail on its trade secret misappropriation claims. *See Fitness Together Franchise L.L.C.*, 2020 WL 6119470, at *10.

### C. FTF's Trademark Misappropriation Claims Are Likely to Succeed

To establish a claim for federal trademark infringement, FTF must show: "(1) the mark is validly registered; (2) [Defendants'] use of the mark was unauthorized; and (3) [Defendants'] use is likely to cause confusion in the market place concerning the source or quality of the products." *Big O Tires, Inc., v. Bigfoot 4x4, Inc.*, 167 F.Supp.2d 1216, 1222 (D. Colo. 2001); *Donchez v. Coors Brewing Co.*, 392 F.3d 1211, 1219 (10th Cir. 2004) (listing the same elements under Colorado law); *see also Wood v. Wood's Homes, Inc.*, 519 P.2d 1212, 1215–16 (Colo. App. 1974) (Colorado courts widely protect trade names to prevent public confusion).

FTF can establish these elements here. First, FTF adopted its Marks, which are validly registered with the USPTO, nearly four decades ago in connection with its fitness and nutrition services and has used those Marks in commerce ever since. (Movant's

Appx., p. 4 – Ex. 1, ¶¶ 9-13; Movant's Appx., pp. 20-25 – Exs. 2 – 4.) Second,

Defendants are currently using the Marks on its exterior signage, without FTF's consent,

to promote their Competitive Business. (Movant's Appx., pp. 13-14 – Ex. 1, ¶¶ 58-59.)

Third, this unauthorized use in the same location as the Ballantyne Studio will

undoubtedly confuse consumers about the connection between Evolve Personal Training

and FTF. (Movant's Appx., pp. 15-17 – Ex. 1, ¶¶ 68-71.) FTF has a likelihood of success

on its trademark infringement claim.

### III.    FTF WILL SUFFER IMMEDIATE AND IRREPARABLE HARM ABSENT INJUNCTIVE RELIEF

Courts regularly find irreparable harm where there is an "inability to calculate

damages, harm to goodwill, diminishment of competitive positions in marketplace, . . .

and lost opportunities . . . ." *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356

F.3d 1256, 1263 (10th Cir. 2004). These circumstances exist here. *See Fitness Together*

*Franchise L.L.C.*, 2020 WL 6119470, at *11.

The Franchise Agreement states that FTF's Marks and Confidential Information

have "valuable goodwill attached," their "protection and maintenance are essential," and

their "unauthorized use or disclosure . . . will result in irreparable harm to FTF." (Movant's

Appx., pp. 69-71 – Ex. 5, § 12.4.) Any violation of the restrictive covenants, including the

noncompete, "will result in irreparable harm to [FTF]" and allows for "injunctive relief . . .

to prevent irreparable harm." (Movant's Appx., pp. 71, 75 – Ex. 5, §§ 12.5, 14.8.)

Further, FTF's irreparable harm is real, imminent, and not compensable through

economic damages. FTF's brand was built and thrives in a highly competitive industry

based on the business goodwill it has developed through personal contacts and

dedication to the unique preferences of its clients. (Movant's Appx., p. 17 – Ex. 1, ¶¶ 73-

74.) FTF's focus on customized client service is not only the reason FTF limits the use of its Client Information, but also why damages from loss of goodwill would be impossible to quantify. *See Equifax Servs., Inc. v. Hitz*, 905 F.2d 1355, 1361 (10th Cir. 1990).

Courts in this District routinely find irreparable harm in cases like this one where "territorial integrity and covenants not to compete are essential to maintaining [an] established franchise network" such that harm to such established goodwill is "not readily remedied by damages." *Dry Cleaning*, 2007 WL 4557832, at *3; *Equifax Servs., Inc.*, 905 F.2d at 1361 (citing cases); Restatement (Second) of Contracts § 360(b) (Am. Law Inst. 1981) ("The breach of a covenant not to compete may cause the loss of customers of an unascertainable number or importance."). Indeed, the difficulty of proving damages in non-compete cases makes injunctive relief the preferred remedy in Colorado. *E.g.*, *Dry Cleaning*, 2007 WL 4557832, at *3; *DoubleClick Inc.*, 402 F. Supp. at 1260; *Bar Method Franchisor LLC v. Henderhiser LLC*, 580 F.Supp.3d 979, 989 (D. Colo. Jan. 16, 2022).

Finally, by unlawfully competing against FTF using its trade secrets, Defendants have caused, and will continue to cause unquantifiable harm to FTF, including as follows:

- Defendants are confusing clients into believing Evolve Personal Training is associated with FTF when it is not. Customer confusion causes substantial harm to FTF's brand and erodes its goodwill in the marketplace. *See Fitness Together Franchise L.L.C.*, No. 2020 WL 6119470, at *11 (D. Colo. Oct. 16, 2020); *Core Progression Franchise LLC,* 2021 WL 1222768, at *9.

- Defendants' operation of Evolve Personal Training out of the former Ballantyne Studio is causing FTF to lose clients who would otherwise patronize an FTF location. *See Am. Television and Commc'ns Corp. v. Manning*, 651 P.2d 440, 445-46 (Colo. App. 1982).

- Defendants are harming FTF's business interests by using the benefits and trade secrets they obtained from the FTF franchise to compete against it, diluting the uniqueness of FTF's services. *See Husky Ventures, Inc. v. B55 Invs., Ltd.*, 911 F.3d 1000, 1011-14 (10th Cir. 2018) (citing cases for proposition that "[d]amages flowing from . . . injury to . . . business interests are especially difficult to calculate"); *see also Rent–A–Center, Inc. v. Canyon Television & Appliance Rental, Inc.,* 944 F.2d 597, 603 (9th Cir. 1991) (irreparable harm from violation of

non-compete where intangibles like advertising efforts and goodwill were injured).[7]

- Defendants' conduct threatens a domino effect of irreparable harm to the entire FTF Franchise System. Emboldened by Defendants' example, other franchisees may take the benefits of FTF's front-end investment, brand, goodwill, and trade secret information, abandon the franchise system, and compete against FTF. *See Postnet Int'l Franchise Corp*, 2021 WL 1037914, at *13 (plaintiff's franchise model could be undermined if other franchisees thought they could disregard non-competes based on the defendant's conduct).[8]

 (*See also* Movant's Appx., pp. 15-18 – Ex. 1, ¶¶ 67-81.) These serious harms cannot be

remedied by monetary damages; an injunction is needed to prevent further irreparable

harm to FTF.

## IV.    THE HARM TO FTF FAR OUTWEIGHS THE HARM TO DEFENDANTS CAUSED BY THEIR MISCONDUCT

The balance of harms strongly favors injunctive relief. Injunctive relief will preserve

the status quo as it was before Defendants began competing against FTF using its trade

secrets and trademarks. Holding Defendants to their two-year non-compete simply

enforces the Franchise Agreement on a short-term basis and allows FTF to obtain the

relief it seeks when it prevails on the merits. Any harm to Defendants should be

disregarded because their conduct is unlawful and the Defendants "brought [the] injury

upon [themselves]." *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck*

*Consumer Pharm. Co.*, 290 F.3d 578, 596 (3d Cir. 2002); *Bad Ass Coffee Co. of Hawaii,*

*Inc. v. JH Nterprises, L.L.C.*, 636 F. Supp. 2d 1237, 1251 (D. Haw. 2009) ("Courts

balancing harms to former franchisees who violated non-compete agreements have

---

[7] *See also Postnet Int'l Franchise Corp. v. Wu*, 1:20-cv-03790-DDD-SKC, 2021 WL 1037914, at *13 (D. Colo. Feb. 19, 2021) (injunction might be warranted with "evidence that [defendant] is using any particular aspect of [plaintiff's] 'system' that is distinguishable from common business practices".)

[8] *See also Reconstruction Experts Inc. v. Franks*, No. 2018CV30509, 2018 WL 1973177, at *7 (D. Colo. Feb. 23, 2018) ("[n]umerous [Colorado] cases have recognized that an employer will suffer real, immediate and irreparable harm if its former employees are allowed to unlawfully misappropriate confidential and proprietary information in a competing business.").

similarly been unwilling to allow defendants to point to harms that they could have avoided by abiding by their contract."). On the other hand, FTF suffers considerable harm each day Defendants unlawfully compete against it using FTF's trade secrets and Marks.

## V.    AN INJUNCTION SERVES THE PUBLIC INTEREST

The injunctive relief sought by FTF also serves the public interest, which is served by enforcing valid contracts and lawful behavior. *E.g., Dry Cleaning*, 2007 WL 4557832, at *3; *Bar Method Franchisor LLC*, 580 F.Supp.3d at 997 ("[T]he fact that Colorado statutes permit such noncompete[s] demonstrates that enforcing one would not be against the public interest.") (internal quotations omitted).

The public interest likewise supports protecting valid trade secrets and trademarks from unlawful misappropriation and use—particularly, like those here, which involve proprietary and confidential client data, the unauthorized use of which is, and continues to be, detrimental to FTF, its relationship with its clients, and its business competitiveness. *See Fireworks Spectacular, Inc. v. Premier Pyrotechnics, Inc.*, 86 F. Supp. 2d 1102, 1107 (D. Kan. 2000); *Big O Tires*, 167 F.Supp.2d at 1228 (in a trademark case, public interest is "a synonym for the right of the public not to be deceived or confused"); *see also, e.g., Rocky Mountain Chocolate Factory, Inc. v. SDMS, Inc.*, No. 06-cv-01212-WYD-BNB, 2006 WL 8251823, *5 (D. Colo. 2006). Defendants should be held to their contract and the law.

## VI.    FTF SHOULD NOT BE REQUIRED TO POST SECURITY

Rule 65(c) references "security in an amount that the [C]ourt considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." The Court may, in exercise of discretion, however, determine a bond is unnecessary "if there is an absence of proof showing a likelihood of harm."

*Coquina Oil Corp. v. Transwestern Pipeline Co.*, 825 F.2d 1461, 1462 (10th Cir. 1987).

Such is this case here. As discussed, Defendants will not suffer any undue harm by an

injunction that simply preserves the status quo. *Dry Cleaning*, 2007 WL 4557832, at *2.

Indeed, an injunction will not affect Defendants' future—or present and lawful—business

prospects and interests. Accordingly, no bond should be required.

## **CONCLUSION**

For the foregoing reasons, FTF respectfully requests that the Court grant this

Motion, set this matter for an emergency hearing, and/or immediately enjoin Defendants,

and any other Bound Party, as set forth in the Proposed Order filed herewith as Exhibit

15.[9] FTF further requests that the Court award it reasonable costs and expenses,

including reasonable attorneys' fees, as permitted under the Franchise Agreement.

(Movant's Appx., p. 75 – Ex. 5, § 14.7.)


Dated:  March 7, 2024.                    Respectfully submitted,

                                         *s/ Michael R. Krantz*
                                         Melissa L. Romero
                                         Michael R. Krantz
                                         Wheeler Trigg O'Donnell LLP
                                         370 Seventeenth Street, Suite 4500
                                         Denver, CO 80202
                                         Telephone: 303.244.1800
                                         Facsimile:  303.244.1879
                                         Email:  romero@wtotrial.com
                                                     krantz@wtotrial.com

                                         Attorneys for Plaintiff,
                                         Fitness Together Franchise, LLC

---

[9] Rule 65(d)(2) states that the following will be bound by the Court's order: "(A) the parties; (B) the parties' officers, agents, servants, employees, and attorneys; and (C) other persons who are in active concert or participation . . . ."

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on March 7, 2024, I electronically filed the foregoing
**PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND
PRELIMINARY INJUNCTION** with the Clerk of Court using the CM/ECF system.

I FURTHER CERTIFY that Defendants in this action have been served with the
foregoing document by email and by U.S. Mail as follows:

1909 Madeira Circle
Waxhaw, North Carolina 28173
nikechavanne@gmail.com
ClifHellner32@gmail.com
totalhealthmovement@gmail.com


*s/ Michael R. Krantz*